Common Pleas Court of Hamilton County.

LEAH BICKER V. LAWRENCE M. SCHMIDLAPP

Decided June 19, 1933.

*Rappaport & Rappaport,* for the motion.

*Bert H. Long, contra.*

DARBY, J.

On the motion for new trial three points in particular were urged:

1.   Irregularity in the proceedings of the jury and in the verdicts returned.

2.   Misconduct of prevailing party.

3.   Accident or surprise.

The first point arises from the proceedings when the jury announced that it had arrived at a verdict and was brought into court.

The jury had been instructed that a verdict could be returned upon the concurrence of nine or more of the jurors. When the jury came into court to present its verdict, it presented to the clerk two forms, one a general verdict for the defendant, which recited that nine members of the jury had agreed, but there were ten names upon the verdict, the last one being "James F. Stout, foreman."

The jury also presented a paper which purported to be a verdict for the plaintiff, and bore four signatures, the foreman having signed the last paper twice.

The court called attention to the verdicts and the foreman then stated that he had signed the verdicts assuming that the foreman had to sign all verdicts. The court thereupon stated as follows:

"You were not so instructed. Those agreeing should sign, and nine or more could return a verdict. If there is any confusion about the matter I would like to have it corrected while the jury is present."

Thereupon the foreman responded:

"The only mistake is the foreman signed both papers."

The court called attention to the fact that the document containing the four signatures was not a verdict, and should not have been presented, and then stated:

"If there are any names on this verdict which should not be there, it should be corrected."

Further statements were made by the court, and the foreman evinced the mistaken motion that he should sign the verdict whether he agreed or not. The court thereupon stated:

"We will record the verdict as returned, unless the jury wishes to change it."

The foreman thereupon stated:

"We will sign another if you will give it to us, sign it and make it right."

The court thereupon stated:

"In view of the statement that Mr. Stout made a mistake, there are two verdicts. These will be recorded as well as the others."

The court thereupon said to the jury:

"Ladies and Gentlemen of the Jury: In view of the statement that one name appears upon the verdict which is there by inadvertence, I will ask you to retire to the jury room, give further consideration to the law and the evidence in the case and return a verdict in accordance with the instructions of the court. If nine or more of the jurors agree upon a verdict, those who agree upon the verdict will sign the verdict."

In entering the verdicts of record the court directed that all these proceedings should be entered, which was accordingly done. It is now claimed that there is some prejudicial error in the case.

There is no inconsistency in the two verdicts for the defendant. The mistake was made, as was apparent, in that the foreman, making the tenth juror, signed the first form by mistake, and upon his request that they be allowed to correct it that was done, and the other verdict returned by the jury was strictly in conformity with the first verdict, and the last verdict was signed by nine jurors.

The argument in this case is based upon cases which it is claimed deny the court a right, after a jury is discharged, to recall it to correct a verdict. Of course that is not this case, as the record of the proceedings and the journal entry show very clearly that the jury was in court, and the confusion as to the signatures upon the verdict being apparent, the court called it to the attention of the jury and the foreman requested the opportunity to bring in a correct verdict.

If, as the plaintiff argues, the first verdict was a legal verdict and was recorded, it is just as much a verdict for the defendant as the second verdict, and it could not be that the verdict of a jury should be set aside where more than nine signed, one signed by inadvertence and was given an opportunity to correct it.

The case of *Sutliff* v. *Gilbert,* 8 Ohio, 405, is referred to. In that case the court say:

"It is no cause for setting aside the verdict of a jury, that when agreed upon it is written and sealed, and the jury separate, if after that they come into court and report the sealed verdict.

"It is not misbehavior of a jury in a civil case to make up and seal a verdict and then separate, nor is it error in the court to reassemble the jury and send them out to correct such verdict."

The court in that case, on page 409, points out that if the jury has agreed and its verdict put under seal and shall then be discharged and separate, they may not return to correct a verdict. That would not be disputed, but does not apply to this case.

In *Railway* v. *Henderson,* 37 O. S., 549, it is clearly stated that it was discretionary with the court to permit the jury, after the verdict was announced, to retire for the purpose of correcting it. As the court say:

"But these matters rested in the discretion of the court, which seems to have been exercised in furtherance of justice."

In *Standard Knitting Co.* v. *Van Wie,* 22 C. C. (N. S.), 272, the court say:

"Where a jury has attempted to return a verdict in which they have included improper items of damages, they may upon the direction of the court, amend their verdict."

*Boyer* v. *Maloney,* 27 O. A., 52 is so entirely different from the case in hand that it is no authority except as its implications show that it is within the discretion of the trial court, before the jury is discharged, and there is an evident error in the verdict as returned, to permit the jury to reconsider the case and return a verdict in accordance with the law and the evidence. In that case the jury had been definitely discharged on Saturday. The court reconvened the jury on Monday, and the jurors all stated that the verdict was not their verdict, and thereupon the court instructed them to reconsider the case and another verdict was returned.

Attention is called to the case of *Pugh Co.* v. *Chicowicz,* 24 C. C. (N. S.), 53, in which the court held:

"Where a jury, after returning a verdict in a replevin case were discharged, and certain members of the jury having inquired of the court as to the effect of their verdict,

and upon being informed that it was in favor of the defendant, protested that that was not their intention, it was not error for the court to reassemble the jury and after ascertaining that all of them were mistaken as to the effect of their verdict, resubmit the case to them for further deliberations."

It must be kept in mind that the jury in the case at bar was not discharged, had not separated, and the verdict was not recorded until after the reconsideration by the jury and the return of the second verdict. In no event is the plaintiff deprived of any substantial right by seeking to do justice and have no confusion in a case.

The second ground urged in the motion is misconduct of the prevailing party through his counsel.

In support of this ground the affidavit of counsel for plaintiff was filed, in which he states that counsel for defendant in his argument—

"referred to the testimony of Doctor C. C. Meade, a witness for plaintiff, and in connection with said witness stated to the jury in substance that plaintiff was not compelled to retain the services of said Doctor Meade for the treatment of plaintiff's injuries, and the only reason she did so was because she knew he (Doctor Meade) would go the limit for her in testifying in the case, thereby inferring and imputing to the plaintiff gross misconduct and subornation of perjury."

After the accident in which plaintiff claimed to have suffered injuries, she consulted with Doctor Meade. She had no other physician so far as the testimony shows, and therefore, so far as medical testimony was concerned, relied completely on his testimony. The statements contained in the petition as to the medical facts were obtained from said doctor. It appears that about the time of the preparation of the case for trial, he made additional statements as to conditions of the plaintiff which were not contained in the petition, and which prompted plaintiff's counsel to state that plaintiff was seeking recovery upon additional facts which were not stated in the petition.

The defendant's counsel objected to proving matter not contained in the petition, but after considerable discussion

it was agreed that the doctor could state such additional facts, and before the defendant was required to proceed with his evidence, the plaintiff was to submit to further examination by defendant's physicians.

During the continuance of the doctor's testimony he revealed other facts which it was claimed had not been theretofore referred to, and objection was made to the testimony as to those facts, but under the same arrangement, that the plaintiff should be re-examined by physicians for the defendant, the doctor gave his testimony as to these other and additional facts. To some extent he modified the statement he had evidently made to counsel for the plaintiff, but when his testimony is carefully examined it will be seen that his opinion on the witness stand was that all of the conditions concerning which he testified may have been present in the plaintiff resulting from the accident.

The witness was subject to criticism by both counsel in the case, because it appeared to them that his testimony as given in court did not support his statements given to counsel for the plaintiff before the trial, but as stated, a careful reading of the testimony does not justify such criticism as was made. In argument it is claimed that counsel for the defendant stated that—

"plaintiff was not compelled to retain the services of Doctor Meade for the treatment of plaintiff's injuries, and the only reason she did so was because she knew that he (Doctor Meade) would go the limit for her in testifying in this case."

It is claimed that this imputes to plaintiff gross misconduct and subornation of perjury. The court does not so understand it, and had the attention of the court been called to any suggestion that counsel for defendant was imputing subornation of perjury he would have been rebuked and the jury warned concerning it.

The fact that the doctor was adding to his statement from time to time created a bad impression. It was evident in court at the time, and both counsel were affected by it, but there seems to be really less justification for it than counsel at the time of the trial imputed to it. At any rate,

all that is said here is that plaintiff knew that the doctor would "go the limit." It does not seem that such a statement as that could possibly have been meant to convey the idea that there was perjury committed, or an attempt to suborn the same.

If every heated statement in argument were the ground for new trial, verdicts would be very uncertain, and it would be in the power of counsel to prevent any verdict from standing.

In *R. R. Co.* v. *Burr & Jeakle,* 82 O. S., 129, there was a direct question of liability, and counsel for the plaintiff in argument stated to the jury that the defendant had offered to compromise the claim. The court held that the withdrawal of such a statement, and the admonition of the court to the jury in such a case did not relieve the prejudicial effect of the statement, and reversed the judgment, saying however, that such action would not be taken if it clearly appeared from the record that such improper statements did not influence the verdict.

In this case there was ample evidence of injury, and the plaintiff, had she proven actionable negligence on the part of the defendant, would have been entitled to recover. The only effect of Doctor Meade's testimony and his position as a witness was as it may have entitled the plaintiff to a greater recovery, but the fact that the jury returned a verdict for the defendant shows that the question of damages was not considered, and therefor, though the jury may have put an unfavorable construction upon the statements of defendant's counsel, it would not have prevented some recovery had she proven her case.

*Hayes* v. *Smith,* 62 O. S., 161 is a case in which judgment was reversed, among other grounds for improper argument of counsel in accusing opposing counsel of a deliberate purpose and effort to suppress the truth, having hired an attorney for that purpose, and stating and assuming facts which were not in evidence, and commenting on evidence which had been ruled out, and in which case the court refused to take any action when it was called to his attention. The report of the misconduct of counsel is contained in two pages of the record, in which the counsel

persisted in improper conduct against objections, as to which the court paid no attention. That is quite a different situation from the one presented here.

In *The Warder, Bushnell & Glessner Co.* v. *Jacobs*, 58 O. S., 77, objectionable language was used by the counsel for plaintiff, appealing to the jury on the ground of the poverty of the plaintiff and the wealth of the defendants. In that case the record is silent as to whether the matter was called to the attention of the trial court, and whether or not said court took appropriate action in the matter. The court say that even though the language is improper "the presumption in such case is that the court performed its duty, and the evidence sustained the verdict."

The evidence surely sustained the verdict in this case, and the presumption is that the court performed its duty if the matter was called to its attention.

As to the alleged accident and surprise, all that need be said is that the witness involved was the only witness as to the medical facts in the case. Counsel for plaintiff claims that the witness misled him as to certain testimony which he would give. It was assumed by plaintiff's counsel that the witness did not testify as the witness had led counsel to believe he would, but upon examination of the testimony there is sufficient to show that the witness was giving his opinion as to possible effects of the injury, and there does not seem to be any basis for the claim of surprise in the case.

The plaintiff could not prove the medical facts on another trial without this same witness, and the witness would be subject on another trial to the same examination, cross-examination and criticism as he was subject to on this trial.

The defendant cannot be charged with any acts or conduct in producing the situation of which the plaintiff complains. It was his own witness, and a mere exaggeration, if it were such, of the facts in his testimony would not seem to justify the claim that the verdict should be set aside because of that fact.

The verdict was amply sustained by the evidence. Any other verdict would seem to be entirely without proper legal support. The motion for new trial is therefore overruled.